IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

LESLIE NEAL SCOTT,                )
                                  )
        Plaintiff,            )    TC-MD 120706N
                                    )
      v.                      )
                                    )
DEPARTMENT OF REVENUE,      )
State of Oregon,               )
                                  )
        Defendant.        )    **DECISION**

Plaintiff appeals Notices of Deficiency Assessment, issued by Defendant for the 2007 and 2008 tax years.[1] (Ptf's Compl at 7-10.) A trial was held in the Oregon Tax Courtroom in Salem, Oregon on May 1, 2013. Orrin L. Grover, Attorney at Law, appeared on behalf of Plaintiff. Plaintiff testified on his own behalf. Tyler Wallace (Wallace), Tax Auditor, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 8 were received without objection. Defendant's Exhibits A through I and K through M were received without objection. Plaintiff objected to Defendant's Exhibit J, a one page excerpt from a Pendente Lite Order that did not include the date of the Order. Wallace stated that Defendant's Exhibit J was provided to him during the audit. The court excluded Defendant's Exhibit J because Defendant failed to show that Exhibit J was relevant to the issues presented in this appeal.

## I. STATEMENT OF FACTS

For the 2007 and 2008 tax years, Plaintiff claimed certain business deductions for his adult foster care business, Scott's Quality Care. (*See* Ptf's Exs 1, 4; Def's Exs C, D.) Plaintiff testified that he operated the business with his former wife, Debra. Plaintiff testified that he and

---

[1] Plaintiff withdrew his appeal of Defendant's Notice of Deficiency Assessment for the 2009 tax year. (Ptf's Statement of Issues, Nov 8, 2012.)

Debra lived in Sandy and they operated the business out of a facility in Gresham. He testified that the facility was a five-bed foster care home that "typically" housed between four and five residents. Plaintiff testified that the business "usually" had three or four employees, including a resident care manager and a few substitute care providers. Plaintiff testified that the residents were provided meals, "Depends," over-the-counter pharmaceuticals, and beds as part of their care. Plaintiff testified that Debra left in March 2008 and he ceased operations of the adult care facility in June 2008.

Plaintiff testified that he maintained a separate checking account and a separate debit card for Scott's Quality Care. (*See* Ptf's Exs 4, 8). He testified that he did not have any receipts for the 2007 and 2008 tax years, but he did have bank statements for his business checking account for the 2007 and 2008 tax years. (Ptf's Exs 4, 8.) Plaintiff testified that he prepared proposed amended income tax returns (proposed returns) for 2007 and 2008 based on the bank statements for his business checking account, but he did not file those returns with Defendant or the Internal Revenue Service (IRS). (Ptf's Exs 1-3, 5-7.) On his original 2007 Schedule C, Plaintiff reported gross income of $34,505 and total expenses of $34,505 with the explanation of expenses "turned over to Debra." (Def's Ex C at 6-7.) On his proposed federal Schedule C for the 2007 tax year, Plaintiff reported gross income of $80,827.04 and total expenses of $85,352.39. (Ptf's Ex 1 at 3.) Plaintiff did not provide a written explanation of his expenses on his proposed return. (*Id*.) Plaintiff testified that he did not file a Schedule C for the 2008 tax year. On his proposed Schedule C for the 2008 tax year, Plaintiff reported gross income of $41,543.84 and total expenses of $41,165.03. (Ptf's Ex 5 at 3.) Plaintiff did not provide a written explanation of his expenses on his proposed return. (*Id*.)

/ / /

Plaintiff did not provide a written explanation of the expenses claimed on his proposed Schedule Cs for the 2007 and 2008 tax years, but he testified at trial that the expenses were business expenses associated with Scott's Quality Care. His testimony consisted of generalized explanations for certain payments on the business' bank statements. For instance, he testified that a payment to Walmart could have been "anything from food to buying Depends for the residents." (*See* Ptf's Ex 8 at 8.) When asked by Wallace to be more specific, Plaintiff testified that Debra did all of the shopping. He testified that, as a result, he did not have any receipts, nor could he testify with any more specificity regarding business expenses.

Wallace testified regarding his review of Plaintiff's proposed returns. He testified that Plaintiff, in essence, claimed all bank debits from the business checking account as business expenses and claimed all checks written on the business checking account as payroll. Wallace testified that Plaintiff provided no receipts, cancelled checks, or other substantiation of the business purpose of each claimed expense. Wallace testified that, without substantiation of the business purpose of each claimed expense, Plaintiff cannot claim the expenses as business deductions.

Wallace testified that Plaintiff received Form 1099s from LR Property Management reporting rental income to him in the 2007 and 2008 tax years. (*See* Def's Exs G at 28, H at 43-45.)[2] Plaintiff testified that he did, in fact, receive those payments in 2007 and 2008. According to the 2007 IRS transcript provided by Wallace, Plaintiff received rents of $14,418. (Def's Ex G at 28.) Plaintiff filed a Schedule E in 2007 reporting rental income of $14,418 and expenses of $14,418 with the explanation of expenses "turned over to Debra." (Def's Ex C at 8.) According to the 2008 IRS transcript provided by Wallace, Plaintiff received rents of $15,920. (Def's Ex H

---

[2] Defendant's Exhibit H contained two pages labeled as "41," the court's references are to the corrected page numbers.

at 43-45.) Plaintiff testified that he did not file a Schedule E in 2008 reporting any rental income. Wallace testified that because Plaintiff received the rent payments of $14,418 in 2007 and $15,920 in 2008, those amounts should be included in Plaintiff's gross income. (*See* Def's Exs G at 28, H at 43-45.)

Plaintiff also sold Wachovia securities in 2008. (*See* Def's Ex K at 2-3.) According to the 2008 "Form 1099-B Reportable Capital Transactions" provided by Defendant, Plaintiff received gross proceeds of $194,938.23 and a capital gain of $14,306 from the sale of Wachovia securities. (*Id*. at 3-5.) Plaintiff testified that the Wachovia account was liquidated within a few months after Plaintiff and Debra separated. He testified that they divided the funds equally, so his realized gain should only be half of that reported on the Form 1099B.

## II. ANALYSIS

The issues before the court are: Plaintiff's allowable deductions for his business, Scott's Quality Care; Plaintiff's rental income and allowable rental expenses for the 2007 and 2008 tax years; and the amount of Plaintiff's capital gain for the 2008 tax year.

"The Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007." *Ellison v. Dept. of Rev*., TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005).[3] "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. This court has previously stated that a "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v.*

___

[3] All references to the Oregon Revised Statutes (ORS) are to 2007. The 2005 ORS, which are applicable to the 2007 tax year, do not differ materially from the 2007 ORS with respect to provisions cited in this Decision.

*Dept. of Rev.*, 4 OTR 302, 312 (1971). In an income tax appeal, this court has the statutory authority to determine the correct amount of the deficiency (*e.g.*, tax), "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575.

A.    *Income and expenses from Scott's Quality Care*

1.    *Ordinary and necessary business expenses*

The legislature adopted, by reference, the federal definition for deductions, including those allowed under IRC section 162.[4] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" To be "ordinary," the "transaction which gives rise to [the expense] must be of common or frequent occurrence in the type of business involved." *Deputy v. du Pont,* 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940) (citations omitted). A "necessary" expense is one that is "appropriate and helpful" to the taxpayer's business. *Welch v. Helvering*, 290 US 111, 113, 54 S Ct 8, 78 L Ed 212 (1933). As a general rule, IRC section 262(a) prohibits the deduction of most personal and family expenditures. Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r* (*Cohan*), 39 F 2d 540, 543-44 (2d Cir 1930). Yet such an approximation is

/ / /

---

[4] All references to the Internal Revenue Code and accompanying regulations are to the 1986 code, and include updates applicable to 2007 and 2008.

only possible where there is evidence upon which the court may make a reasonable estimate. *Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985) (citation omitted).

Plaintiff provided checking account statements from "Scott's Quality Care" checking account from the 2007 and 2008 tax years. Plaintiff argued that those statements substantiate the claimed expenses on his proposed schedule C's. (*See* Ptf's Exs 4, 8.) Under Revenue Procedure 92-71:

> "An account statement prepared by a financial institution showing an electronic funds transfer (*i.e.* a decrease to the account holder's balance) will be accepted as proof of payment if the statement shows: 1. the amount of the transfer, 2. the date of transfer posted to the account by the financial institution, and 3. the name of the payee."

Rev. Proc. 92-71, 1992-2 CB 437. The Revenue Procedure further states:

> "Proof of payment of an amount alone does not establish that a person is entitled to a tax deduction. A taxpayer should also keep any other documents that may help prove entitlement to a tax deduction (for example, *receipts*, sales slips, charge slips, payment acknowledgements, check registers, and carbon copies of checks)."

*Id.* Plaintiff's checking account statements establish proof of payment, but they do not necessarily establish the business purpose of claimed expenses. Although Plaintiff testified regarding some debits listed on the bank statements, he lacks personal knowledge about many of the claimed expenses because he did not make the purchases; he testified that Debra shopped for their business. Keeping that limitation in mind, the court considers those expenses for which Plaintiff has provided some substantiation and for which the business purpose can be discerned.

On Plaintiff's proposed returns he claimed $85,352.39 in business expenses for the 2007 tax year and $41,165.03 in business expenses for the 2008 tax year. (*See* Ptf's Exs 1, 5.) The only evidence Plaintiff offered in support of his claimed business expenses was the checking account statements and Plaintiff's testimony. At trial Plaintiff was asked to identify the business

purpose of certain electronic payments on his checking account statements. He testified that monthly payments to NW Natural Gas and PGE were payments for gas and electricity at the adult care facility. Plaintiff testified that payments to AOL and T-Mobile were payments for internet and cellular phones that he, Debra, and the staff used for Scott's Quality Care. He could not provide a bill from AOL listing the address where service was provided. Plaintiff testified that payments made to "Farnsworth Trust" were rent payments for the building he used for Scott's Quality Care. He testified that payments to "IRS USA" were payments the IRS took monthly after Plaintiff submitted a Form 941.

Plaintiff was asked by Wallace to identify the business purpose of multiple general debit card purchases. Plaintiff could not identify the specific business purpose of any of those payments or purchases, nor could he produce receipts or identify any specific items that may have been included in any of those purchases. For instance, Wallace asked Plaintiff to identify the business purpose behind a $104 charge at Walmart. Plaintiff responded that it could have been anything from food to "Depends" for the residents. When Wallace asked why Plaintiff could not identify any of the items more specifically, Plaintiff responded that he only had the bank statements and that Debra had done all of the shopping for the residents. Wallace testified that, without receipts, cancelled checks, or other substantiation of the business purpose of each expense, Plaintiff cannot be allowed to claim them as deductions.

Based on the court's review of Plaintiff's bank statements and testimony, the court is persuaded that the payments to NW Natural Gas, PGE, and Farnsworth Trust, for the 2007 and 2008 tax years are substantiated. The court finds that the following expenses should be allowed for the 2007 tax year: $1,747 for payments to NW Natural Gas; $3,542 for payments to PGE; and $9,286 for payments to Farnsworth Trust. Plaintiff testified that he ceased operations of

Scott's Quality Care in June 2008, so the court will allow the following expenses for January through June of the 2008 tax year: $1,247 for payments to NW Natural Gas and $2,602 for payments to PGE.

The court found no substantiation in Plaintiff's exhibits and testimony for the remaining business expenses claimed by Plaintiff. (*See* Ptf's Ex 4, 8.) Plaintiff did not provide the court with any evidence that the AOL service was only for Scott's Quality Care and not his personal use. Plaintiff did not provide the court with any evidence that the cellular phone service was used primarily for business purposes and not personal uses, nor did he provide a log or similar record. Plaintiff's explanation of the IRS payments was confusing and did not provide the court with enough evidence to substantiate the purpose of the payments. The court finds that Plaintiff has failed to meet the burden of proof with respect to the remaining expenses claimed on his proposed returns for the 2007 and 2008 tax years.

2.      *Unreported income from Scott's Quality Care for 2007 and 2008*

At trial Plaintiff offered his proposed Schedule Cs for 2007 and 2008. (Ptf's Exs 1, 5.) Both proposed Schedule Cs reported income that was not included in his original returns for the 2007 and 2008 tax years. (*See* Ptf's Exs 1, 5; Def's Exs C, D.) Plaintiff testified that he had prepared his proposed returns for 2007 and 2008 using the bank statements from Scott's Quality Care. Plaintiff testified that he reported income of $34,505 on his original 2007 Schedule C and income of $80,827 on his proposed Schedule C. (Def's Ex C at 6; Ptf's Ex 1 at 3.) He testified that he did not file a Schedule C reporting income from Scott's Quality Care in 2008, but he reported income of $41,543 on his proposed Schedule C. (Ptf's Ex 5 at 3.)

Wallace argued that Plaintiff conceded unreported business income in 2007 and 2008 and the amounts should be included in his gross income. On his proposed Schedule Cs for 2007 and

2008, Plaintiff reported additional business income not reported on his original income tax returns for the 2007 and 2008 tax years. Plaintiff did not offer any explanation why that additional business income should not be included in his gross income.[5] Based on Plaintiff's testimony, bank statements, and proposed returns, the court is persuaded that Plaintiff had unreported business income of $46,322 in 2007 and $41,543 in 2008.

B.      *Rental Income*

Oregon imposes an income tax on the "entire taxable income" of residents. ORS 316.037(1)(a). ORS 316.022(6) defines taxable income as "the taxable income defined in * * * section 63 of the Internal Revenue Code." IRC section 63 provides that "the term 'taxable income' means gross income minus the deductions allowed by this chapter." Gross income is "all income from whatever source derived" and includes "[r]ents." IRC § 61. Expenses that may be deducted against rental income include all the "ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income." IRC § 212(2).

Plaintiff was issued a Form 1099 from LR Property Management reporting rental income for the 2007 and 2008 tax years. (*See* Def's Exs G, H.) Wallace produced IRS transcripts showing that Plaintiff received rental income of $14,418 for the 2007 tax year and $15,920 for the 2008 tax year. (Def's Ex G at 28; H at 44-45.) Plaintiff filed a Schedule E in 2007 reporting rents received of $14,418 and total expenses of $14,418. (Def's Ex C at 8.) The only

---

[5] IRC section 131(a) excludes from gross income "amounts received by a foster care provider * * * as qualified foster care payments." IRC section 131(b)(1) defines "qualified foster care payment" as "any payment made pursuant to a foster care program of a State or political subdivision thereof * * * * * (B) which is -- (i) paid to the foster care provider for caring for a qualified foster individual in the foster care provider's home[.]" Plaintiff did not assert or offer evidence that any payments received by Scott's Quality Care were "qualified foster care payment[s]" that should be excluded from gross income under IRC section 131. Absent evidence establishing that payments received by Scott's Quality Care were "qualified foster care payment[s]" under IRC section 131, the court concludes that the income is taxable.

explanation Plaintiff offered for the expenses was that the income was "turned over to Debra." (*Id*.) Plaintiff did not file a Schedule E for the 2008 tax year. Plaintiff testified that he had received the rents reported in 2007 and 2008, but he believed Debra was entitled to the rental income, so he turned the rental income over to her. Plaintiff testified that he did not attempt to reassign the Form 1099s to Debra or otherwise correct the Form 1099s.

After reviewing the parties' exhibits and testimony, the court finds that Plaintiff has failed to provide the court with any evidence of expenses that were paid or incurred for the management, conservation, or maintenance of his rental property. The court finds that Plaintiff received rental income of $14,418 in 2007 and rental income of $15,920 in 2008. He failed to establish any expenses associated with his rental activity in 2007 and 2008.

C.    *Capital gain*

The issue here is how much of the realized capital gain from the sale of securities in 2008 should be attributed to Plaintiff. IRC section 1001(a) states, in part, that "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain * * *." Under IRC section 1011(a), "[t]he adjusted basis for determining gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis" determined under IRC section 1012. IRC section 1012 states that "[t]he basis of property shall be the cost of such property * * *."

According to the 2008 "Form 1099-B Reportable Capital Transactions" Plaintiff received gross proceeds of $194,938.23 and $14,306 in capital gain from the sale of Wachovia securities. (Def's Ex K at 2-5.) Plaintiff testified that the Wachovia account had been a joint account owned by him and Debra. He asserted that the distribution from the sale of securities had been divided equally between him and Debra, so his portion of the realized gain was half of $14,306.

Plaintiff did not produce any documentation to show that the account was owned jointly by him and Debra. Plaintiff also did not produce any evidence that he was required to or did in fact provide half of the proceeds from the sale of securities to Debra. Wallace produced the "Form 1099-B Reportable Capital Transactions" showing only Plaintiff's name and social security number on the account and reporting $14,306 of capital gain to him. (Def's Ex K at 5.)

After reviewing the evidence and testimony presented, the court finds that Plaintiff has failed to provide any evidence that the Form 1099B reporting Plaintiff's capital gain of $14,306 in 2008 was in error. The court finds that Plaintiff realized a capital gain of $14,306 in 2008.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff has substantiated some of his claimed expenses for the 2007 and 2008 tax years. The court further finds that Plaintiff received rental income and had unreported income in 2007 and 2008. The court further finds that Plaintiff realized a capital gain in 2008. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2007 tax year, Plaintiff is allowed business deductions in the amount of $14,575.

IT IS FURTHER DECIDED that, for the 2007 tax year, Plaintiff received $14,418 in rental income and Plaintiff received $46,322 in unreported business income.

IT IS FURTHER DECIDED that, for the 2008 tax year, Plaintiff is allowed business deductions in the amount of $3,849.

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that, for the 2008 tax year, Plaintiff received $15,920 in rental income; Plaintiff failed to report $41,543 in business income; and Plaintiff realized a capital gain of $14,306.

Dated this ____ day of June 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on June 24, 2013. The Court filed and entered this document on June 24, 2013.*